**Kurent**

v.

**Farmers Insurance of Columbus, Inc.**

*[Cite as 4 AOA 357]*

*Case No. 14098*
*Summit County, (9th)*
*Decided June 29, 1990*

*Wayne F. Benos, Attorney at Law, Bulkley Bldg., 8th Floor, 1501 Euclid Ave., Cleveland, OH 44115, for Plaintiffs.*

*James W. Slater, Attorney at Law, 1000 Society Bldg., Akron, OH 44308, for Defendant.*

CIRIGLIANO, J.

This cause is before the court upon appellant's Farmers Insurance of Columbus, (Farmers) appeal from the trial court's order granting a motion for summary judgment to appellees, Mr. and Mrs. Thomas E. Kurent, (Kurents) in a declaratory judgment action regarding obligation under an automobile insurance policy.

*FACTS*

This action has at its origin a July 11, 1987, automobile accident in Michigan involving the Kurents, who are Ohio residents, and one Michael Karczewski, a resident of Michigan. It is undisputed that the Michigan resident caused the accident and is insured by AAA Michigan under Michigan's no-fault insurance laws. The Kurents are insured under a policy issued by Farmers, an Ohio insurer.

The Kurents asserted a claim against Karczewski and his insurer, AAA Michigan. The Michigan insurer acknowledged that Karczewski was protected by insurance, as required by Michigan law, but denied the claim maintaining that under Michigan no-fault laws the Kurents were not entitled to recovery. The Kurents then proceeded to file a claim pursuant to their uninsured motorist coverage with Farmers. However, Farmers responded that it was not obligated to

pay such benefits because the Michigan tortfeasor was in fact fully insured at the time of the accident. Farmer's contention is that their obligation to the Kurents is limited to the benefits available under Michigan's no-fault laws. Farmers claims that they have paid these benefits to the Kurents and the Kurents have accepted them.

Upon Farmer's refusal to pay uninsured motorist benefits, the Kurents filed a declaratory judgment on December 16, 1987, to determine their rights under the insurance contract. Each party then filed respective motions for summary judgment. The trial court was in a journal entry dated March 24, 1989, granted Kurents's motion for summary judgment and concluded the following:

"(1) that under a conflict of laws analysis Ohio laws applied to the determination of this action because Ohio has the most significant relationship to the parties and issues;

"(2) since the Michigan insurer denied coverage, the Michigan tortfeasor is deemed to be uninsured; and

"(3) Farmers must pay benefits to the Kurents under the uninsured motorists provisions of the policy".

Farmers files this timely appeal presenting the following assignments of error.

### ASSIGNMENTS OF ERROR

"I. The trial court erred in holding that Ohio law controls in determining the extent of Farmers' duty to compensate Kurents for the injuries they sustained while driving in Michigan.

"II. The trial court erred in finding that the insured Michigan tortfeasor was an uninsured motorist, and that uninsured motorist coverage is therefore available to the Kurents.

"III. The trial court erred in holding that the Kurents are entitled to uninsured motorist coverage, because even if Ohio law applies, and an insured out-of-state driver can constitute an uninsured motorist under Ohio law, the Kurents' claim for coverage under the uninsured motorist provision of their policy is premature until the Kurents have established that the tortfeasor's insurance is inapplicable to their claim.

"IV. The trial court erred in finding that the insurance policy provides for 'broader coverage' under the circumstances of this case, and in characterizing coverage under Michigan no-fault law as 'more narrow.'"

Since appellant's assignments are so interconnected, we will review them together and address them accordingly.

The sole issue to determine in this case is whether Ohio residents insured by an Ohio insurer are entitled to uninsured motorist benefits under their insurance policy arising from an automobile accident that occurred in Michigan caused by a Michigan resident who is subject to his state's no-fault laws. The trial court concluded that the Michigan no-fault scheme does not apply and the Kurents are entitled to their uninsured motorists benefits. In resolving this issue, the court below applied a conflict of laws analysis and determined that Ohio law should govern the extent of the obligations owed by Farmers to their insureds. We do not agree with the approach adopted by the lower court.

Central to any conflicts of laws analysis is the presence of a genuine conflict between the substantive laws of two states, each having a direct interest in the parties and issues in dispute. Based upon the review of the action before us, we conclude that no true conflict of laws exists in this case and the trial court's disposition of this declaratory judgment action under the purview of a conflict of laws analysis was improper. Instead, we find that the solution to this action lies in the application of the provisions found in the insurance agreement between Farmers and the Kurents.

Since the purpose of the declaratory judgment action is to determine the availability of uninsured motorist benefits, we will begin with an examination of the language as found in the uninsured motorist provision of the Kurents policy.[1] The relevant provision provides, in part, as follows:

### PART II - UNINSURED MOTORIST COVERAGE

"We will pay all sums which an insured person is legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by the insured person. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of the uninsured motor vehicle.

"Determination as to whether an insured person is legally entitled to recover damages or the amount of damages shall be made by agreement between the insured person and us. If no agreement is reached, the decision will be made by arbitration."

The uninsured motorist provision is subject to the following definition and limitation:

"3. Uninsured motor vehicle means a motor vehicle which is:

"* * *.

"d. Insured by a bodily injury liability bond or policy at the time of the accident but the Company denies coverage or is or becomes insolvent."

These provisions are in accordance with Ohio's statutory requirements and limitation as prescribed by R.C. 3937.18 (A) and (D).

Accordingly, uninsured motorist coverage is available to the Kurents only if they are "legally entitled to recover" as contemplated by Ohio's laws and the insurance policy. The trial court agreed with the Kurents' argument that they have satisfied the policy and statutory definition of an uninsured vehicle in that the Michigan insurer denied the Kurents' claim. However, under the circumstances of this case, classifying the Michigan insurer's conduct as a denial is inaccurate.

In *York* v. *State Farm Fire & Cas. Co.* (1980), 64 Ohio St. 2d 199, the Ohio Supreme Court held that uninsured motorist coverage applies only in those situations in which the "lack of liability insurance" is the reason the claim goes uncompensated. *Id.* at 202. The phrase "legally entitled to recover" was further construed in *Sumwalt* v. *Allstate Ins. Co.* (1984), 12 Ohio St. 3d 294. In *Sumwalt*, the Ohio Supreme Court ruled legal entitlement requires that the insured be able to prove such elements of the claim as are necessary to recover damages. *Id.* at 295.

We now need to direct our attention to the Michigan no-fault laws to determine whether the Kurents are legally entitled to recover for their injuries resulting from the accident. Under the act, all owners or registrants of motor vehicles registered in Michigan must maintain the insurance required by the act. Section 3135 of Michigan's no-fault act abolishes, with certain expectations, tort liability arising from the ownership, maintenance or use within the state of a motor vehicle with respect to which security for personal protection insurance, property protection insurance and residual liability was in effect. M.C.L.A. Section 500.3135(2). As an exception to this abrogation of tort liability, the no-fault act establishes a threshold requirement for recovery for non-economic losses for tort liability as to any plaintiff injured on the Michigan highways. This threshold requires that a plaintiff must first establish death, serious impairment of body function or permanent serious disfigurement as a result of the accident before there can be any recovery from the tortfeasor's insurer. M.C.L.A. Section 500.3135(1).

Section 3104 of the no-fault act creates a catastrophic claims association. Each insurer engaged in writing insurance coverages, as a condition of transacting business in the state, is bound to contribute funds to the association. The association's purpose is to provide indemnification to its members for catastrophic claims submitted by a member's insured. M.C.L.A. Section 500.3104. Catastrophic claims are those claims that satisfy the threshold level for liability. In other words, this association provides liability coverage to any person who is insured by an insurance carrier participating in Michigan's no-fault insurance system.

This brief description of the operating structure of the Michigan no-fault system, when applied to the circumstances surrounding the Kurents' claim, leads to the conclusion that the Kurents are not legally entitled to recover from the Michigan tortfeasor and therefore do not have uninsured motorist benefits available to them.

This conclusion is primarily justified by the following two reasons. First, as previously noted, Ohio law recognizes an uninsured motorist only when such a status is due to a lack of liability insurance. *York, supra.* It is undisputed that the Michigan tortfeasor *was insured,* as required by Michigan law, at the time of the accident. As an insured with an insurer that is a contributor to the Michigan no-fault system, the individual is eligible to receive no-fault benefits via the liability coverage provided through the catastrophic association.

Second, the Kurents were not denied coverage by AAA, the Michigan tortfeasor's insurer, rather AAA refused any liability for the Kurents' claim because the Kurents' injuries were not sufficiently serious to satisfy the threshold requirement for recovery in tort for non-economic damages under Michigan law. The Kurents have not proven the elements necessary to recover damages. *Sumwalt, supra.* In short, the Kurents' claim was rejected not because of insufficient insurance coverage, but rather because of insufficient injuries.[2]

Having determined that the Kurents are not eligible for uninsured motorist coverage because they are not legally entitled to recover from the Michigan tortfeasor, we now address the provi-

sion in the insurance agreement governing the parties' rights and obligations specific to this factual setting. In the insurance policy, under Part I Liability, the following provision is found, stating:

"Out of State Coverage

"An insured person may become subject to the financial responsibility law, compulsory insurance law o[r] similar law of another state or in Canada. This can happen because of ownership, maintenance or use of your insured car when you travel outside of Ohio. We will interpret this policy to provide any broader coverage required by those laws, except to the extent that other liability insurance applies. No person may collect more than once for the same elements of loss."

This provision is known in the insurance trade as a personal injury protection provision and is commonly found in automobile insurance contracts. The trial court found that the provision provided the Kurents with "broader" coverage when traveling out of state but the trial court only considered this provision as one of the factors in its conflict of laws analysis. Since we have concluded that a conflict of law approach is inappropriate in this case, we must re-evaluate the effectiveness of this provision.

The "out of state" coverage provision undertakes a greater obligation than merely providing for an increase in the minimum insurance requirement if that state's financial responsibility requirements are higher than those of Ohio's. In essence, this provision is the insurer's commitment to interpret the policy so as to provide all the liability coverage as required by the jurisdiction where the Kurents are traveling. Thus, Farmers' obligation to their insureds, who are involved in an accident in no-fault jurisdictions, is to provide benefits identical to those provided to individuals subject to that state's no-fault act.

This obligation to its insureds arises primarily from the insurance agreement and not from the application of any one state's substantive laws. The laws of Ohio and Michigan may define the legal parameters of the coverage but the existence of the obligation is purely contractual in nature.[3]

Under this interpretation, Farmers, as a no fault insurer by contract, is responsible to the Kurents for coverage under the bodily injury liability portion of the policy, specifically the provision regarding out of state coverage. The bodily injury liability coverage limitations under the Kurents' policy are $100,000.00 per person

and $300,000.00 per accident. Farmers claims that it has paid to the Kurents those benefits that they are entitled under no-fault principles. However, the Kurents respond that the payments were made by Farmers Insurance Exchange, which is the parent company of the appellant herein and not a party to this lawsuit.

Additionally, the Kurents assert that any payments made by parent company that are credited to the amounts owed by Farmers are no more than that which is owed under the medical payments coverage provision of the insurance contract. To the extent that there exists a genuine dispute as to this material fact, disposition of this matter by summary judgment is not well taken.

Based upon the reasons stated, we hold that the trial court was in error in applying a conflicts of law analysis to determine that Ohio law was the governing factor leading to the conclusions that the Michigan tortfeasor was an uninsured motorist and that uninsured motorist coverage is available to the Kurents. We also disagree with the trial court's decision regarding the effectiveness of the policy's provision controlling out of state liability coverage.

Accordingly, we sustain the Kurents' assignments of error and reverse the judgment below to the extent that it is inconsistent with this opinion. We remand this case to the trial court.

*Judgment reversed and*
*cause remanded.*

CACIOPPO, P. J., and BAIRD, J., concur.

---

[1]  The Kurents' uninsured coverage limitations are $100,000.00 per person and $300,000.00 per occurrence. These limits are equivalent to limits under the policy's bodily injury liability coverage.

[2]  The record is inconclusive as to whether the extent of the Kurents' injuries were legally determined nor is there any indication that the claim was submitted to arbitration.

[3]  Under Michigan law, the Kurents are not entitled to receive no-fault benefits because non-residents occupying motor vehicles not registered in the state are excluded from the no-fault system unless their insurer voluntarily complies with Michigan's insurance certification requirements. *Gersten* v. *Blackwell* (1981), 111 Mich. App. 418.